COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

CARL McWHERTER,                                          )

                                                                              )             
No.  08-03-00435-CV

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )               
394th District Court

THE AGUA FRIO RANCH,                                 )

                                                                              )          
of Brewster County, Texas

Appellee.                           )

                                                                              )          
(TC# 2000-12-B7628-CV)

                                                                              )

 

 

O
P I N I O N

 

Appellant Carl
McWherter appeals from a partial summary judgment granted in favor of Appellee,
The Agua Frio Ranch (AAgua
Frio@) against
Texas Bentonite, L.C.  Mr. McWherter
asserts three issues.  In Issue One, he
challenges the granting of the partial summary judgment.  In Issue Two, he challenges the termination
of the lease agreement between Agua Frio and Texas Bentonite.  In Issue Three, he challenges the trial court=s granting of the motion to sever the
order granting partial summary judgment filed by Agua Frio.  We will dismiss the appeal.








In December of
2000, Agua Frio Ranch filed a lawsuit against Texas Bentonite, L.C., Carl
McWherter, John Doe No. 1, and John Doe No. 2. 
The lawsuit concerned a lease entered into in 1987, where Agua Frio
leased approximately 23,000 acres of ranch land in Brewster County, Texas, to
B.P. McKinney for bentonite mining.  The
lease was later assigned to Texas Bentonite. 


The lease provided
for, inter alia, royalty payments to Agua Frio in the amount of a Aflat rate of Five and no/100 Dollars
($5.00) per ton for all bentonite removed from the premises, with $3.50 of said
$5.00 being payment for the bentonite product itself and the remainder for
damages to the surface, with payment to be made within ten (10) days of Lessee=s receipt of payment for all material
removed.@  It also required the lessee to Aat all times, keep written records of
the amounts and material removed from the Lease and the same shall be available
to Lessors for the purpose of verifying such amounts.@








In early 2000,
Agua Frio requested an audit of Texas Bentonite=s
written records of the amounts and material removed from the property.[1]  An audit was scheduled for May 31, 2000 and
was attended by Mr. McWherter and Ronnie Henzie, appearing on behalf of Texas
Bentonite; Mr. McWherter provided Agua Frio with a hand generated spreadsheet
of numbers prepared by Mr. Henzie specifically for the audit.  Further documentation was needed for the CPA
firm hired by Agua Frio to reconcile and at a second meeting, Agua Frio
requested numerous documents which Texas Bentonite failed to provide.  At a third meeting, Mr. McWherter
disclosed that some of the invoices were simply created in order to secure loans
made to Texas Bentonite, and that this would make it difficult to
reconcile.  He further represented that
Texas Bentonite had not received payment for the bentonite sold and thus,
royalty payments had not been made to Agua Frio.  He also stated that some bentonite was sold
to Jerry Bakke; Mr. Bakke=s
payments had been recorded as payments on debts owed by Mr. Bakke to Texas
Bentonite, and not as income subject to royalties.[2]  As required by the lease, Agua Frio granted
Texas Bentonite additional time to provide all the necessary documentation to
fully determine the production and sales of Texas Bentonite on the lease, but
even then Texas Bentonite failed to produce any more documents.

In its original
petition, Agua Frio presented seven causes of action.  It alleged the following:

(1)        breach of contract by Texas Bentonite;

 

(2)        fraud, breach of fiduciary duties, and
negligence per se, gross negligence and willful misconduct by Texas Bentonite
and Mr. McWherter;

 

(3)        aiding and abetting a fiduciary in
breach of its duties, against John Doe 1 and John Doe 2;

 

(4)        civil conspiracy to commit fraud, breach
of fiduciary duty, breach of contract, negligent per se, gross negligence and
willful misconduct by all the named defendants; and

 

(5)        fraudulent concealment by all the named
defendants.

 

In May of 2001,
Texas Bentonite filed its original answer containing a general denial and two
affirmative defenses pertaining to standing and statute of limitations and Mr.
McWherter filed his original answer pro se.








Agua Frio then
filed a motion for partial summary judgment against Texas Bentonite, only.  The motion did not name or include relief
from Mr. McWherter.  In its motion, Agua
Frio alleged that Texas Bentonite had breached its contractual obligations
under the lease by failing to keep adequate records demonstrating the amount of
production and royalty due to Agua Frio as provided by the lease.  Agua Frio asked the trial court to:  (1) grant a judgment against Texas Bentonite
and determine that it had breached its Lease Agreement with Agua Frio; and (2)
that because of the breach, Agua Frio was entitled to cancel the Lease as a
matter of law.  Texas Bentonite filed a
response refuting Agua Frio=s
allegations.  Texas Bentonite included
the following paragraphs in part of its response:

Although Plaintiff=s motion does not seek monetary
damages, it does seek attorneys=
fees incurred in the prosecution of this matter.  Texas Bentonite believes, and intends to
prove, that any breach of the Lease was caused or intentionally undertaken by
Defendant McWherter, while he was the general manager of Texas Bentonite, in
breach of his fiduciary duties to the company. 
Texas Bentonite was completely unaware of the wrongful activities of
Defendant McWherter while he held that position.  Texas Bentonite believes that the Lease
between Texas Bentonite and Plaintiff was not fulfilled because Defendant  McWherter, acting contrary to the best
interests of the company he was duty-bound to present, withheld information and
did not pay the royalties owed under the Lease. 
See Exhibit >A.= 
Plaintiff=s summary
judgment evidence indicates that Defendant McWherter was acting on [sic]
concert with other individuals in attempting to defraud Plaintiff in breach of
the Lease agreement.

To the extent that
there is any damage or wrongdoing, Defendant Texas Bentonite believes and
contends that that liability falls squarely on Defendant McWherter, who was
acting as a rogue officer, in violation of his fiduciary duties to the
company.  See Exhibit >A.=  Texas Bentonite is currently investigating
its claims against Defendant McWherter, which will be filed with this Court
when appropriate.

 








On November 8,
2001, Attorney Monty Kimball entered an appearance of counsel for Mr. McWherter.[3]  McWherter then filed a response to Agua Frio=s motion contending that a fact  issue existed as to whether or not the
documents provided by Mr. McWherter, acting for Texas Bentonite, and the paid
royalty payments satisfied the relevant sections contained in the lease.

A few weeks later,
Mr. McWherter filed a First Amended Answer of Carl McWherter Individually and
As General Manager of Texas Bentonite in which he challenged Jeanette Hall=s status as general manager of Texas
Bentonite and her capacity to answer or defend this lawsuit on behalf of Texas
Bentonite.[4]  A review of the record indicates that the
trial court never made a ruling on this issue. 
It appears however, that Mr. McWherter decided not pursue such issue as
is reflected in his filing of a Notice To Withdraw Verified Motion To Show
Authority To Roy Ferguson to act as attorney for Texas Bentonite.

On February 21,
2002, Texas Bentonite filed a First Amended Answer and Cross-Claims, and Third
Party Claims.  The third-party claims
were later nonsuited, leaving only the cross claims against Mr. McWherter.  Texas Bentonite alleged that Mr. McWherter
had breached his fiduciary duty and duty of care, had misappropriated corporate
assets, had usurped the corporate opportunity, and it raised claims of
conspiracy.  Texas Bentonite further
requested contribution and indemnification in the event that it is held liable
for any claims made in this lawsuit or any other lawsuit.  On December 12, 2003, the trial court entered
an order realigning the parties, making Texas Bentonite the plaintiff and Mr.
McWherter the defendant.  According to
Agua Frio=s
representation in its brief, that case, Texas Bentonite L.C. v. Carl McWherter,
was severed from the instant case and remains pending.








On November 15,
2001, the trial court entered an order granting Agua Frio=s motion for partial summary judgment.[5]  On July 15 , 2003, the trial court entered an
order granting Agua Frio=s
motion to sever the partial summary judgment between itself and Texas Bentonite
from the rest of the lawsuit.[6]  Then, on July 16, 2003, Agua Frio filed a
Notice of Nonsuit, nonsuiting Texas Bentonite, L.C., McWherter, John Doe #1,
and John Doe #2 of all claims unresolved by the Order on Summary Judgment.  Thereafter, Mr. McWherter filed a motion for
new trial, which was denied by operation of law.  Mr. McWherter then filed a notice of appeal
stating that he is appealing from Athe
Summary Judgment and Order Granting Plaintiff=s
Motion to Sever . . . .@

Mr. McWherter
brings forth three issues on appeal.  In
response, Agua Frio claims that Mr. McWherter lacks standing to bring this
appeal.  Agua Frio argues that Mr.
McWherter was not a party to the partial summary judgment and, as a result of
the nonsuit, he is no longer even a defendant in the original action brought by
Agua Frio.  The only case to which Mr.
McWherter is a party, is the claim asserted against him by Texas
Bentonite.  After reviewing the record,
we stand in agreement with Agua Frio.








A summary judgment
that does not dispose of all issues and parties is interlocutory and may not be
appealed absent statutory authority permitting an interlocutory appeal.  See Cherokee Water Co. v. Ross, 698
S.W.2d 363, 365 (Tex. 1985)(orig. proceeding); Schlipf v. Exxon Corp.,
644 S.W.2d 453, 454 (Tex.1982)(Opin. on reh=g).  Alternatively, the trial judge may sign an
order severing a party, cause of action, or issue, thereby rendering an
otherwise interlocutory summary judgment final. 
See Martinez v. Humble Sand & Gravel, Inc., 875 S.W.2d 311,
312 (Tex. 1994); Hood v. Amarillo Nat'l Bank, 815 S.W.2d 545, 547 (Tex.
1991); Schlipf, 644 S.W.2d at 454. 
An order granting a severance is effective when signed, regardless of
whether the district clerk creates a separate physical file with a different
cause number.  McRoberts v. Ryals,
863 S.W.2d 450, 452‑53 (Tex. 1993). 
Following such a severance, the judgment becomes final and may be
appealed without a separate physical file or different number.  See Martinez, 875 S.W.2d at 313; McRoberts,
863 S.W.2d at 453.

In this case, the
partial summary judgment granted by the trial court became a final appealable
order with the signing of the severance order by the trial court.  The only question is whether Mr. McWherter is
entitled to bring an appeal from that judgment. 









As a general rule
of Texas law, to have standing a plaintiff must demonstrate an interest in a
conflict distinct from that of the general public, such that the defendant=s actions have caused the plaintiff
some particular injury.  See Hunt v.
Bass, 664 S.W.2d 323, 324 (Tex. 1984). 
A party must show that its interest has been prejudiced before it has
standing to appeal.  Gorman v. Gorman,
966 S.W.2d 858, 864 (Tex.App.--Houston [1st Dist.] 1998, pet. denied.)  An appealing party cannot complain of errors
that do not injuriously affect its rights or that merely affect the rights of
others.  See Buckholts Indep. Sch.
Dist. v. Glaser, 632 S.W.2d 146, 150 (Tex. 1982); Hanna v. Godwin,
876 S.W.2d 454, 457 & n.5 (Tex.App.--El Paso 1994, no writ)(footnote lists
other cases reflecting this rule).  A
party of record is normally entitled to appeal, however the party=s own interest must be prejudiced
before it has standing to appeal.  Reynolds
v. Reynolds, 860 S.W.2d 568, 570 (Tex.App.--Dallas 1993, writ denied).  Appellant bears the burden of making a prima
facie showing of prejudice.  Gorman,
966 S.W.2d 864.

Mr. McWherter
fails to demonstrate how his interests were prejudiced by the granting of the
summary judgment filed by Agua Frio solely against Texas Bentonite.  The general rule is that only the parties to
a contract have the right to complain of a breach thereof.  Tennessee Gas Pipeline Co. v. Lenape
Resources Corp., 870 S.W.2d 286, 295 (Tex.App.--San Antonio 1993), aff=d in part and rev=d in part on other grounds, 925
S.W.2d 565 (Tex. 1996).  In this case,
Mr. McWhether was not a party to the lease at issue.  At the hearing on the motion for partial
summary judgment, Agua Frio made it clear to the court that the only thing it
was asking for was a cancellation of the lease entered into by itself and Texas
Bentonite.  It did not seek any judgment
against Mr. McWherter.

The language of
the order granting partial summary judgment reads as follows:

On this the 15 day of
November, 2001 came to be considered Plaintiff=s
Motion for Partial Summary Judgment. 
After hearing argument of counsel and considering all evidence before
the Court, it is ORDERED that the Motion be GRANTED.

It is therefore,
ORDERED, ADJUDGED AND DECREED that the September 17, 1987 lease between The
Agua Frio Ranch and Texas Bentonite, L.C. as successor in interest to B.P.
McKinney, is terminated.  

All relief not granted
herein is hereby denied. 

 

From this language, it is clear the
order granting partial summary judgment merely terminated the lease between
Texas Bentonite and Agua Frio.  The
granting of the partial summary judgment did not extend or assign liability to
Mr. McWherther for such termination.  The
only party who had summary judgment granted against it was Texas
Bentonite.  








Texas Bentonite
did not file an appeal from the order granting partial summary judgment in
favor of Agua Frio.  At the time partial
summary judgment was granted, Texas Bentonite had filed cross-claims against
Mr. McWherther for breach of fiduciary duty, mismanagement of the corporation,
usurpation of the corporate opportunity, and misappropriation of assets.  The ruling that the lease was terminated, did
not,  per se, make Mr. McWherther
liable to Texas Bentonite.  See Gorman,
966 S.W.2d at 866.  We therefore find
that Mr. McWherther lacks standing to appeal the partial summary judgment
granted against Texas Bentonite.

Because Mr.
McWherter lacks standing to appeal the summary judgment granted to Agua Frio,
we may not consider the issues he seeks to raise.

We dismiss the
appeal.  

 

 

July
15, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before McClure, Chew, and Rivera, JJ.

(Rivera, J., Sitting by Assignment)











[1]
As represented by Agua Frio=s
attorney, it requested specific information from Texas Bentonite, including
documentation demonstrating production from the lease; records of all tonnage
produced from the lease; records indicating the amount of bentonite sold from the
lease; all production contracts between Texas Bentonite and buyers; bank
statements and deposit slips of Texas Bentonite; all tax returns of Texas
Bentonite, including income tax and production tax; documentation showing all
royalty payments made to the Ranch; documentation demonstrating all sales to
third parties from the production of the lease in which the lessors have a
royalty interest; and tax returns and preparation reports for Texas Bentonite.





[2]  Mr. Henzie
corroborated this information.  





[3]
On March 21, 2002, the trial court entered an order allowing Mr. Kimball to
withdraw as Mr. McWherter=s
counsel.  Attorney Steve Spurgin entered
an entry of appearance of counsel for Mr. McWherter in September of 2002 and
remains his attorney in this appeal.





[4]
Apparently, there was a meeting on January 27, 2001, where Mr. McWherter was
removed as general manager and replaced by Jeanette Hall.





[5]
The record indicates that the order was not signed until October 7, 2002.





[6]
The order reads as follows:

 

Came on for
consideration the AGUA FRIO RANCH=S
Motion to Sever the Order Granting Plaintiff=s
Motion for Partial Summary Judgment as between Plaintiff and Defendants in this
cause.  The Court finds that granting
Plaintiff=s Motion
for Partial Summary Judgment decreed that the lease between Plaintiff and
Defendant TEXAS BENTONITE, L.C. as successor in interest to B.P. McKinney was
terminated and that severance is appropriate; accordingly,

It is ORDERED that the Partial Summary
Judgment as between Plaintiff and Defendants is severed, the judgment as
between Plaintiff and Defendants remains in full force and effect and,
therefore, becomes a final judgment.